**WO**                                    NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aleksander Popovic, *et al.*, | No. CV-15-00357-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Christine Spinogatti, *et al.*, | |
| Defendants. | |

At issue are the following motions: Defendant Bank of America, N.A.'s [1] Motion for Summary Judgment (Doc. 77, Mot.), to which Plaintiffs filed a Response (Doc. 89, Resp.) and Defendant filed a Reply (Doc. 126, Reply); Defendant's Motion *in Limine* Pursuant to Rule 37(c)(1) to Preclude Plaintiffs from Introducing or Relying on Damages Evidence (Doc. 76, Mot. *in Limine* 1), to which Plaintiffs filed Responses (Docs. 81, 82); and Defendant's Second Motion *in Limine* Pursuant to Rule 37(c)(1) to Preclude Plaintiffs from Introducing or Relying on Damages Evidence Disclosed for the First Time in Plaintiff's Response to Motion for Summary Judgment (Doc. 121, Mot. *in Limine* 2), to which Plaintiffs filed a Response (Doc. 132). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motions *In Limine* and Motion for Summary Judgment.

---

[1] Bank of America, N.A. (BANA) is the only remaining named Defendant in this action.

I.      BACKGROUND

The following facts are undisputed unless otherwise indicated.

A.      Relevant Parties and Entities

Plaintiff Aleksander Popovic formed Plaintiff Greyside Group, Inc. (Greyside) in 2008 and acted as president of the company. (Doc. 1-1, Am. Compl. at 56.) Greyside provided privately contracted security forces to protect freightliners against violent attacks abroad. (Am. Compl. at 56.) Greyside is the majority owner of Greyside Global, LLC, an investment vehicle for third-party investors. (Am. Compl. at 56; Doc. 78, Defs.' Statement of Facts in Supp. of its Mot. for Summ. J. (DSOF), Ex. 1, Popovic Dep. at 214–15.)

Robert Caulfield, through his companies, TrustCommerce and Ciphertronics, invested in Greyside. (Popovic Dep. at 47, 149–51.) Christopher Gowins was an employee of TrustCommerce and, at the bequest of Mr. Caulfield, became involved in Greyside's business operations. (DSOF, Ex. 23, Gowins Dep. at 14–17.)

Kenton Associates Resources Corporation (KARC) is a wholly-owned subsidiary of Greyside that was used for payroll. (Popovic Dep. at 199.)

Greyside used Defendant BANA for its business banking. Plaintiffs allege that Defendant, acting through its employees, including Christine Spinogatti, allowed for the unauthorized transfer of funds from Greyside's '4610 Account and improperly relied on purported authorization from Mr. Caulfield and Mr. Gowins.

B.      The '4610 Account, Investment in Greyside and Related
        Authorization Documents

In 2009, Mr. Popovic, as president of Greyside, opened a business bank operating account ("the '4610 Account") at the BANA Glendale, Arizona branch. (Am. Compl. at 56; DSOF, Ex. 2, Villanueva Decl. at 2, Exs. A, B.) Mr. Popovic signed the Corporate Signature Card pertaining to the '4610 Account on February 12, 2009, which stated that Greyside agreed the '4610 Account would be governed by the terms and conditions in the Deposit Agreement and Disclosures and other BANA documents. (Villanueva Decl.,

Ex. A.) Plaintiffs agree that a contract was formed between the parties via the Deposit Agreement, but contend it cannot be determined what version of the Deposit Agreement– whether the 2008 Deposit Agreement as Defendant asserts or some other version–was in effect at the time Mr. Popovic signed the Signature Card. (Doc. 90, Pl.'s Statement of Facts in Supp. of Their Response and Request to Deny Bank of America N.A.'s Mot. for Summ. J. (PSOF)[2] at 2.) Defendant, relying on the deposition of Rosalva Villanueva, a Litigation Specialist for Defendant, contends that the November 1, 2008 version of the Deposit Agreement and Disclosures was the operative version at the time Mr. Popovic opened the '4610 Account, and its terms govern. (Villanueva Decl. at 1, 3.)

In 2011, Mr. Popovic was in need of capital financing to move forward with his developing business. (Popovic Decl. at 45–47.) Mr. Caulfield agreed to invest in Greyside, and on May 13, 2011, Mr. Popovic signed a $500,000 promissory note from Greyside to the entity Ciphertronics, which Mr. Caulfield owned. (Popovic Decl. at 47, 149–151.) That same day, Ciphertronics wired $351,962.50 to the '4610 Account and the remaining funds to a Lloyds of London entity to pay for Greyside's insurance. (Popovic Dep. at 150–152; DSOF, Ex. 3.) In his deposition, Mr. Caulfield testified he was not prepared to fund the $500,000 until the Signature Card giving him authorization over the '4610 Account was in effect. (DSOF, Ex. 5, Caulfield Dep. at 64.)

Defendant asserts the following regarding the execution of the BANA Signature Card, to all of which Plaintiffs object. On May 13, 2011, Mr. Caulfield and Mr. Popovic visited the BANA branch office at I-17 and Carefree Highway (the Glendale Branch) to authorize Mr. Caulfield as a signer on the '4610 Account. (DSOF, Ex. 6, Barnett Decl. at 2–3, Exs. A–B; Caulfield Dep. at 62–65.) An employee of Defendant, Jerry Barnett,

---

[2] This document is styled as "Plaintiff's" (singular) Statement of Facts and states that "Plaintiff Aleksander Popovic" submits the document. (*See* Doc. 90 at 1.) The caption, however, refers to "their response" indicating the Statement of Facts pertains to all Plaintiffs and "their response." (*See* Doc. 90 at 1.) Because Defendant's Motion for Summary Judgment is against all Plaintiffs, the same attorney represents all Plaintiffs in this matter, and Plaintiffs are related as those other than Mr. Popovic are his business entities, the Court takes the relevant briefing on the motions before the Court to be on behalf of all Plaintiffs in this matter, not just Mr. Popovic.

1    testified that he prepared the Signature Card, and handwrote the names of Mr. Popovic

2    and Mr. Caulfield as "President" and "Auth. Signer," respectively, and the Signature

3    Card in evidence bears the signatures of both Mr. Popovic and Mr. Caulfield. (Barnett

4    Decl. at 2, Exs. A–B.) It was Defendant's and Mr. Barnett's normal practice to look at the

5    previous signature card for an account and verify that at least one of the individuals

6    present for the purpose of adding or changing an authorized signer on a business

7    checking account was an authorized signer on the account. (Barnett Decl. at 2.) Upon

8    verification, Mr. Barnett's normal practice would been to have the corporate

9    representative, in this case Mr. Popovic, sign both the Corporate Resolutions and

10   Signature Cards, and he would require that each authorized signer present two forms of

11   identification. (Barnett Decl. at 2.) The second page of the Signature Card documentation

12   has two identification verifications that include Mr. Popovic's and Mr. Caufield's driver

13   license numbers and Mr. Popovic's Bank of America Visa Debit Card ending in '3318,

14   which Mr. Popovic testified was assigned to him. (Barnett Decl. at 2, Ex. B; Popovic

15   Dep. at 87–89.) The identification verification information is in Mr. Barnett's

16   handwriting. (Barnett Decl. at 2, Ex. B.) Bank records also show that Mr. Caulfield and

17   Mr. Popovic signed a document entitled, "Certified Copy of Corporate Resolution –

18   Opening and Maintaining Deposit Account and Services" (Corporate Resolution).

19   (Barnett Decl. at 1–2, Ex. A.)

20        Plaintiffs contend Mr. Caulfield was not in Arizona on May 13, 2011, to execute

21   the Signature Card.[3] (PSOF at 5–7.) To support this assertion, Plaintiffs point to the

22   ─────────────
        [3] The parties spend considerable time addressing whether Mr. Popovic was in
23   Europe on May 13, 2011, as Plaintiffs previously asserted. The Court does not address
     this issue because Plaintiffs, in their Response, now state Mr. Popovic "may have been
24   incorrect as to his travel dates" (Resp. at 21), and Defendant has provided evidence from
     U.S. Customs and Border Patrol that contradicts Plaintiffs' previous assertion (DSOF,
     Ex. 16).
25        Plaintiffs also contend that Mr. Popovic denied that he met Mr. Caulfield at a
     BANA branch in Arizona on May 13, 2011. In support, Plaintiffs cite Exhibit 2 to their
26   Statement of Facts, which they incorrectly identify as Mr. Popovic's deposition
     transcript. When the Court located Mr. Popovic's deposition transcript as Exhibit 3 to
27   Plaintiffs' Statement of Facts, the page number Plaintiffs cited was not included in the
     pages provided. (PSOF at 7.) There are numerous other mistakes and/or missing exhibits
28   in Plaintiffs' filing. In addition, many of Plaintiffs' statements in their Statement of Facts
     are not supported by the record cites. For example, paragraph 33 of their Statement of

Promissory Note also executed on May 13, 2011, that states "Newport Beach, California" on the first page (PSOF, Doc. 98-1, Ex. 7 at 1; DSOF, Ex. 3) and emails between Mr. Popovic and Mr. Caulfield that do not mention they were in each other's presence that day (PSOF, Ex. 10[4] at 162–71).

As to the Corporate Resolution, Mr. Popovic testified the signature on the document "appears to be my signature," but "I don't know if it is or it isn't. It appears to be a signature type of my name, but I can't tell you if it's my signature or not." (Popovic Dep. at 53.) He then stated, "I can tell you it's probably not my signature because the way the Ps are signed," and clarified it was not his signature on the document. (Popovic Dep. at 53–54.) Defendant's handwriting expert opined Mr. Popovic signed the Corporate Resolution and the Signature Card. (DSOF, Ex. 8, Handwriting Report at 1, 6.)

Mr. Caulfield testified regarding an unaltered copy of an email from Mr. Popovic to him dated June 3, 2011 concerning his status as signer on the '4610 Account. (Caulfield Dep. at 70–71; DSOF, Ex. 9.) The email referenced the complete number of the '4610 Account and stated "Just went to bank," and, "You and I are the only signers on the account. Balance is $100,000.00 USD." (DSOF, Ex. 9.) Mr. Popovic also

---

Facts provides, "Gowins' responsibility was, 'basic bookkeeping' for GSG [Greyside] however he was not a signor on the 4610 bank account," citing to Exhibit 11 (Gowins Dep.) at 17:9. That line in Gowins' deposition, and those around it in the transcript, provide that Mr. Gowins was engaged in conference calls and management meetings – there is no mention of whether or not Mr. Gowins was a signor on the '4610 Account.

The Court is under no obligation "to scour the record in search of a genuine issue of triable fact," nor is it obligated to rectify Plaintiffs' mistakes or give credence to Plaintiffs' misrepresentations. *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Indeed, the Ninth Circuit Court of Appeals has previously "upheld a district court's summary judgment where there was a violation of a pertinent local rule expressly indicat[ing] that the [nonmoving party] had an affirmative burden to list genuine issues with appropriate record citations in order to withstand the motion for summary judgment." *Id.* (internal citation omitted); *see also* LRCiv 56.1(b) (requiring reference "to a specific admissible portion of the record").

Defendant also noted its concern with regard to missing exhibits in Plaintiffs' filings. In their Response to Defendant's Second Motion *in Limine*, Plaintiffs state the Court's electronic filing system was rejecting their documents, but Plaintiffs notified Defendant's counsel of this and delivered a copy of the exhibits to Defendant. (Doc. 132 at 4.) The Court does not resolve this issue because it is not material to the Court's decision on the Motions.

[4] Plaintiffs' electronic filing of their exhibits to their Statement of Facts does not include Exhibit 10. Plaintiffs provided the Court with the hard copy of their exhibits, which include Exhibit 10, Mr. Caulfield's deposition transcript.

1   produced the email from his records (DSOF, Ex. 10), and Defendant's forensic computer

2   expert opined the Exhibit 10 email is authentic (DSOF, Ex. 11 at 5, 11).

3          **C.     Mr. Gowins and the Greyside Accounts**

4          Defendant asserts Mr. Popovic signed various authorization documents allowing

5   Mr. Gowins to take actions on the Greyside BANA accounts. Mr. Gowins was an

6   employee of TrustCommerce, the entity through which Mr. Caulfield invested in

7   Greyside. (Gowins Dep. at 14.) Mr. Caulfield initially asked Mr. Gowins for his

8   assistance with Greyside's financials, and later, Mr. Gowins took responsibility for

9   bookkeeping. (Gowins Dep. at 14–17.) Mr. Gowins testified he obtained access to

10  Greyside accounts after he, Mr. Popovic, and Mr. Caulfield signed various documents

11  and set up a CashPro account, which was attached to the Greyside account and allowed

12  for efficient wiring of funds globally. (Gowins Dep. at 17–25.) Mr. Gowins sent

13  Mr. Popovic documents via email that with Mr. Popovic's signature, would allow

14  Mr. Gowins to open and manage the CashPro account on behalf of Greyside. (Gowins

15  Dep. at 25.) An August 2011 email from Mr. Gowins to Mr. Popovic and BJ Lamb, Chief

16  Operating Officer of Greyside, regarding the authorization documents for the CashPro

17  account states, "Currently these [documents attached to the email] assign me as the

18  administrator and allow me to conduct transactions without a 2nd authorization."

19  (Gowins Dep. at 21–25; DSOF, Ex. 24.) Mr. Gowins also testified that he received the

20  signed authorization forms allowing him to open the CashPro account from Mr. Popovic

21  via email, and the email from Mr. Popovic to Mr. Gowins indicates the same. (Gowins

22  Dep. at 26; Exs. 25–27.) Attached to an email from Mr. Lamb to Mr. Popovic and

23  Mr. Gowins is the BANA "Authorization and Agreement for Treasury Services"

24  document, which bears the signatures of both Mr. Popovic and Mr. Lamb, and the BANA

25  CashPro authorization with Mr. Popovic's signature. (DSOF, Ex. 27.)

26         Mr. Gowins also testified that Mr. Popovic signed off on additional authorizations.

27  In September 2011, Mr. Popovic signed a BANA Deposit Account Documentation

28  Signature Card after Mr. Gowins informed Mr. Popovic that he would need additional

1    authorization for other wiring actions for the Greyside account. (Gowins Dep. at 38–41;

2    DSOF, Ex. 29.) In an email from Mr. Popovic in response to Mr. Gowins's authorization

3    request, Mr. Popovich states, "Here's the signed signature card." (DSOF, Ex. 28.) Mr.

4    Popovic also authorized the opening of the KARC account with Defendant (Popovic Dep.

5    at 199), and Mr. Popovic executed documents allowing Mr. Gowins access the account in

6    August 2011 (Gowins Dep. at 32–35, 37–39; DSOF, Exs. 31–32).

7         Defendant's forensic computer expert confirmed the accuracy and authenticity of

8    the email correspondence described above. (DSOF, Ex. 11 at 5, 11.)

9         For their part, Plaintiffs assert Mr. Gowins was not a signor on the '4610 Account,

10   but do not cite to any evidence supporting that assertion. Generally, Plaintiffs appear to

11   contend that the various authorizations Mr. Gowins' asserts he obtained from

12   Mr. Popovic with regard to Greyside accounts were not in fact obtained and rather, the

13   documents only "purported to have Mr. Popovic's signature." (PSOF at 9–10.) Plaintiffs

14   also spend considerable time reviewing the actions of Ms. Spinogatti, an employee of

15   Defendant handling the transfer of funds in the '4610 Account, and contend her actions

16   were contrary to Defendant's practices and policies and her training. (PSOF at 14–15.)[5]

17        **D.    Dispute and Breakdown Among the Business Partners**

18        Mr. Popovic, Mr. Caulfield, and the other business partners had a falling out in

19   2011, resulting in Mr. Popovic initiating a suit against Mr. Caulfield and Mr. Gowins,

20   among others. (DSOF, Exs. 12–13.) By September 2011, Mr. Caulfield had concerns

21   about Mr. Popovic's conduct and business decisions. (Caulfield Dep. at 109; Ex. 33 at 3.)

22   After learning that Mr. Popovic had used Mr. Caulfield's personal credit card for what

23   Mr. Caulfield believed to be personal expenses, he decided to end his involvement with

24   Greyside. (Caulfield Dep. at 116–18; DSOF, Ex. 34.)

25        On November 1, 2011, Mr. Gowins requested, via letter, that Ms. Spinogatti

26   transfer out all remaining funds in the '4610 Account into the Greyside Global operating

27        [5] Plaintiffs' Statement of Facts includes other statements with regard to
28   Ms. Spinogatti's failure to comport with proper procedures, but Plaintiffs again
     misrepresent many of her statements, and the Court does not consider those portions of
     Plaintiffs' Statement of Facts.

account and close the '4610 Account. (Gowins Dep. at 56–57; DSOF, Ex. 35.) Ms. Spinogatti stated that upon receipt of Mr. Gowins' request, she reviewed the Corporate Resolution and Signature Cards for the '4610 Account, and that while Mr. Gowins was authorized to close the account per the Deposit Account Documentation Signature Card, it was the policy of her department to require a person authorized under the Corporate Resolution to request an account closure. (DSOF, Ex. 36, Spinogatti Decl. at 4.) After notifying Mr. Gowins of this, Mr. Caulfield, who was authorized under the Corporate Resolution on file with the bank, sent a letter to Ms. Spinogatti requesting the bank close the '4610 Account. (Spinogatti Decl. at 4, Ex. B.) Ms. Spinogatti consulted with her manager, Ted Tragos, who approved closing the '4610 Account. (DSOF, Ex. 37, Spinogatti Dep. at 137–145; Spinogatti Decl. at 4.) Mr. Gowins also directed Ms. Spinogatti to close the KARC Account, and she did so. (DSOF, Exs. 38–39.)

The Court now considers Defendant's Motion for Summary Judgment as to Plaintiffs' breach of contract, breach of covenant of good faith and fair dealing, negligence, and negligent hiring, training, and retention claims.[6]

## II.   SUMMARY JUDGMENT LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the

---

[6] In their Amended Complaint, Plaintiffs allege the following claims against Defendant: aiding and abetting tortious conduct (Am. Compl. at 8); breach of fiduciary duty (Am. Compl. at 13); and a claim under the Uniform Commercial Code, A.R.S., Title 47, Chapters 4 and 4A (Am. Compl. at 12–13). Defendant addresses these claims in its Motion for Summary Judgment, but Plaintiffs do not mention or address the claims in their Response. Accordingly, Plaintiffs have abandoned those claims. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (stating plaintiff abandoned two of her claims when she did not raise them in opposition to the motion for summary judgment).

entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.    THE PARTIES' EVIDENTIARY DISPUTES

Before addressing the merits of Defendant's Motion for Summary Judgment, the Court must resolve evidentiary disputes that bear on the Court's analysis.

### A.    Mr. Popovic's 2011 In-Court Testimony and 2015 Deposition Testimony

In its Motion for Summary Judgment, Defendant argues Mr. Popovic's 2015 deposition testimony that he did not sign the Corporate Signature Card, making Mr. Caulfield an authorized signer on the '4610 Account, is a sham contradicting his previous, sworn testimony in this Court in 2011. (Mot. at 10.)

### 1.      Legal Standard

The "general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (citing *Foster v. Arcata Associates*, 772 F.2d 1453, 1462 (9th Cir. 1985)); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543–44 (9th Cir. 1975). This rule is commonly referred to as the "sham affidavit rule." "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Foster*, 772 F.2d at 1462; *Radobenko,* 520 F.2d at 544. The principles of the sham affidavit rule apply equally to the situation here, where Mr. Popovic's prior, sworn testimony in this Court may be at odds with his later deposition testimony, which, like an affidavit, is sworn testimony.

The sham affidavit rule should be applied with caution because it is in tension with the principle that a court should not make credibility determinations when deciding a motion on summary judgment. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). The rule does not automatically dispose of every case in which a contradictory affidavit is introduced, but rather, the court must make a factual determination that the contradiction was in fact a sham. *Id*. The court must also find the inconsistency between a party's earlier and subsequent testimony to be clear and unambiguous to justify striking the later testimony. *Id*. at 998–99.

### 2.      Analysis

In November 2011, in his case against Mr. Caulfield and others, Mr. Popovic testified at a Temporary Restraining Order hearing in this Court before Judge Wake. The testimony was as follows:

> Q:      Who are the signatories on the Global bank accounts? Who's entitled to access those bank accounts?
>
> A:      The original account was a Greyside Group, Inc., bank account.
>
> Q:      Okay.

A:      Mr. Caulfield and I, after he invested his money, he was put on as a signer, I mean, he and I were the only two on the bank account as signers.

THE COURT:      Did you each have the authority to sign or was it joint signature required? And my question is whether he has unilateral authority without your approval?

THE WITNESS:      I don't think that's the case, Your Honor, but I'm not a hundred percent certain.

(DSOF, Ex. 14 at 70.) At Mr. Popovic's January 2015 deposition, he testified that while he saw a signature that "appears to be [his] signature" on the May 13, 2011 Signature Card purportedly giving Mr. Caulfield authorization as a signer to the '4610 Account, he did not recall signing the document and he did not believe it was his signature. (Popovic Dep. at 51–56.)

The Court acknowledges whether or not Mr. Popovic's 2011 and 2015 statements contradict each other is a close call, but for several reasons, the Court does not find the inconsistency between the statements to be clear and unambiguous. *See Van Asdale*, 577 F.3d at 998–99. Because of the compound questions and Mr. Popovic's unclear responses, the 2011 testimony does not make entirely clear what Greyside account Mr. Popovich was being asked about, and Mr. Popovic's responses indicate he was not certain whether Mr. Caulfield had the authority to make unilateral actions on any Greyside account. Although Mr. Popovic generally states Mr. Caulfield was "put on as a signer," this does not directly contradict the narrower subject of Mr. Popovic's 2015 deposition testimony that he did not sign the Signature Card dated May 13, 2011. In addition, the transcript from the 2011 hearing does not indicate Mr. Popovic was examined "at length," and the Court is not inclined to find a clear inconsistency based on such a small portion of testimony from that time. *See Foster,* 772 F.2d at 1462. These concerns, taken together, persuade the Court that the contradiction between Mr. Popovic's 2011 and 2015 testimony is not clear and unambiguous. *See Van Asdale*, 577 F.3d at 998–99. The Court will not discard Mr. Popovic's 2015 deposition testimony as a sham in its resolution of Defendant's Motion for Summary Judgment.

### B.        Plaintiffs' Damages Case

In its Motions *in Limine* and Motion for Summary Judgment, Defendant argues Plaintiffs should not be able to introduce evidence at summary judgment or trial regarding their alleged damages because Plaintiffs never disclosed any damages case or expert damages witnesses during discovery. (Mot. at 1; Mot. *in Limine* 1 at 1–2; Mot. *in Limine* 2 at 1–2.) Specifically, in Defendant's first Motion *in Limine*, it seeks to exclude damages allegations that it alleged Plaintiffs set out for the first time in a letter from Plaintiffs' counsel dated October 29, 2015, after discovery closed. (*See* Mot. *in Limine* 1.) In that Motion, Defendant also argued Plaintiffs had never set out any specific Defendant bank account transactions they challenged. (Mot. *in Limine* 1 at 5.) In Defendant's second Motion *in Limine*, it seeks to exclude new information Plaintiffs included in their Response to Defendant's Motion for Summary Judgment, including the specific Defendant bank account transactions Plaintiffs challenge and a declaration from Dave Engert, Mr. Popovic's mentor and a disclosed fact witness, in support of Plaintiffs' damage claim. (*See* Mot. *in Limine* 2 at 2.) Defendant also argues because damages are a *prima facie* element of every cause of action, the case should be dismissed. (Mot. at 1.)

### 1.        Legal Standard

Federal Rule of Civil Procedure 37(c)(1) provides, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." This rule "gives teeth to these [Rule 26(a) and (e)] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) [and (e)] that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) is "a recognized broadening of the sanctioning power," and as the Ninth Circuit Court of Appeals noted referring to the Advisory Committee Notes, the rule is a "self-executing, automatic sanction to provide[ ] a strong inducement for disclosure of material." *Id*. (internal quotations omitted). The burden to show that the violation of Rule

26(a) or (e) is substantially justified or harmless is on the party facing sanctions. *Yeti*, 259 F.3d at 1107.

The Ninth Circuit and district courts have excluded untimely damages disclosure information and witnesses under Rule 37(c)(1) for failure to comply with Rule 26, even when such exclusion results in dismissal of a claim. *Munchkin, Inc. v. Playtex Products, LLC*, 600 F. App'x 537 (9th Cir. 2015), *as amended* (July 31, 2015); *Remington v. Mathson*, 575 F. App'x 808, 809 (9th Cir. 2014); *Cable v. City of Phoenix*, No. CV-12-00216-PHX-JAT, 2013 WL 6532023, at *7, 13 (D. Ariz. Dec. 13, 2013), *aff'd in part*, *rev'd in part and remanded*, No. 14-15037, 2016 WL 1380913 (9th Cir. Apr. 7, 2016); *HM Hotel Properties v. Peerless Indem. Ins. Co.*, No. CV-12-0548-PHX-DGC, 2013 WL 4507602, at *3–4 (D. Ariz. Aug. 23, 2013), *aff'd*, 624 F. App'x 520 (9th Cir. 2015). Where a Rule 37(c)(1) sanction will amount to dismissal of a claim, the Court must consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and consider the availability of lesser sanctions. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012).

Federal Rule of Civil Procedure 26(a)(1) requires that a party disclose "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."[7]

Rule 26(a)(2) requires disclosure of expert testimony in accordance with the schedule set by the Court. The deadline for disclosure of experts passed in this case and

---

[7] Arizona Rule of Civil Procedure 26.1(a)(7), which was applicable to this case prior to removal, also requires disclosure of "[a] computation and the measure of damage alleged by the disclosing party and the documents or testimony on which such computation and measure are based and the names, addresses, and telephone numbers of all damage witnesses." To the extent Plaintiffs argue Arizona Rules of Civil Procedure apply in this case after removal, that argument is invalid and the Federal Rules of Civil Procedure applied after this case was removed on February 26, 2015 (Doc. 1). Fed. R. Civ. P. 81(c).

on August 13, 2015, the Court ordered Plaintiffs were precluded from relying on or proffering an expert opinion or report on damages. (Doc. 59; Doc. 88-1 at 30:12–31:19.)

When a party has updated or new information, Rule 26(e) requires that a party who has made disclosures under Rule 26(a) supplement or correct its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

### 2.    Analysis

Plaintiffs generally allege they are entitled to damages based on the unlawfully transferred funds from the '4610 Account and related damages arising from the injury Greyside suffered, including injury from loss of value of the company and compensable damages to Greyside's reputation.

### a.    Plaintiffs Failed to Comply with Rule 26

Plaintiffs repeatedly failed to meet their obligation under Rule 26(a)(1) to disclose a computation of each category of damages claimed and make available supporting materials. Plaintiffs' initial Rule 26.1 disclosure statement, served in October 2014, did not provide a computation and measure of damages. (Mot. *in Limine* 1, Ex. A at 16.) In their initial disclosure, Plaintiffs stated a computation of damages was detailed in the description of the legal basis for each claim, but those sections only included general descriptions of damages devoid of any detail. (Mot. *in Limine* 1, Ex. A at 8–14.) In a letter dated December 31, 2014, Plaintiffs' counsel stated she reviewed the financial records to determine what documents she would need to provide an accurate computation of damages and she was awaiting input from Plaintiffs' expert, but would send the finalized list of requested documents to Defendant by the end of the following week. (Mot. *in Limine* 1, Ex. D at 2.) She also stated she believed damages would be no less than $250,000, and that she was awaiting additional expert reports that would further inform the claimed loss. (Mot. *in Limine* 1, Ex. D at 2.)

Plaintiffs also repeatedly stated, through counsel and Mr. Popovic himself, that Mr. Popovich would not testify as to any type of damages, but after the close of discovery, Plaintiffs attempted to have Mr. Popovic do just that. In Plaintiffs' counsel's December 31, 2014 letter, she stated, "Mr. Popovic will not testify about losses, our disclosed expert will." (Mot. *in Limine* 1, Ex. D at 2.) Again, on January 6, 2015, in a letter to Defendant's counsel, Plaintiffs' counsel stated, "I have made it very clear, that Mr. Popovic will not be testifying to damages . . . ." (Mot. *in Limine* 1, Ex. F at 1.) At his deposition on January 7, 2015, Mr. Popovic testified he did not have any independent knowledge of the basis for the $250,000 in damages and he could not identify any specific, contested bank transactions. (Mot. *in Limine* 1, Ex. E at 183–86.) He also testified he would rely on the expert witness with regard to other damages. (Mot. *in Limine* 1, Ex. E at 178–79.)

Plaintiffs' arguments in response to Defendant's Motions *in Limine* are unavailing and do not directly address the lack of information and Plaintiffs' counsel's failure to provide additional information as outlined above. Plaintiffs contend that from other materials they provided, such as Plaintiffs' "in house records, terminated contracts, business plan, [and] capital influx," (Doc. 82 at 9), investment documents that show Mr. Caulfield's investment (Mot. *in Limine* 1, Ex. H at 8), and corporate documents that show Greyside's outstanding shares (Mot. *in Limine* 1, Ex. H at 8), Defendant could have ascertained the value of Greyside's business loss damages. They also state that from their disclosures, Defendant could have reasonably expected that the result of transferring the funds from the '4610 Account "would be the demise of Plaintiff's Company as a whole," and Defendant could have adopted Mr. Caulfield's investment valuation as a reasonable damage. (Mot. *in Limine* 1, Ex. H at 8–9.) Plaintiffs also point to Defendant's own actions, such as its Notice of Removal that articulated damages exceeding $75,000 (*see* Doc. 82 at 4–5, 10–11), and contend that these show Defendant could ascertain Plaintiffs' asserted damages.

Plaintiffs' other disclosures and theories as to how Defendant *could have* determined their damages case does not constitute compliance with Rule 26(a)(1)'s requirement to disclose a computation of each category of damages claimed. The Court finds Plaintiffs were also noncompliant with Rule 26(e)'s requirement to supplement disclosures with further evidence or analysis as to damages as discovery progressed. This is especially so where Plaintiffs' counsel led Defendant to believe that specific information as to transactions at issue was forthcoming, which implicitly shows Plaintiffs were aware of the need to provide or supplement damages disclosure information.

Plaintiffs also incorporated into their Response to Defendant's Motion for Summary Judgment a declaration from Mr. Engert to support Plaintiffs' newly asserted damages claim of $6.7 million. (Resp. at 17–18.) Defendant asserts Plaintiffs proffered Mr. Engert as a "faux expert" to render "faux expert" valuation opinions, and his opinion should be excluded because the Court previously ruled Plaintiffs were barred from using a damages expert after they missed the applicable discovery deadline. (Mot. *in Limine* 2 at 3, 8–9.) Plaintiffs previously disclosed Mr. Engert as a fact witness expected to testify as to his "review of company records" and "relevant facts within knowledge." (Doc. 132 at 2.) Plaintiffs' previous disclosure of Mr. Engert with no indication that he would testify as to damages has no effect on the Court's determination that Plaintiffs failed to provide a computation of damages as required by Rule 26(a). Accordingly, the Court finds Mr. Engert's testimony as to damages is precluded and it need not reach the parties' argument regarding whether or not Mr. Engert would provide expert testimony or opinion.[8]

---

[8] Defendant also argues Mr. Popovic should be barred from providing testimony as to damages based on an expert investment valuation theory because he is a lay witness and investment valuation testimony would constitute expert testimony that Plaintiffs are barred from providing. (Mot. *in Limine* 1 at 8–9.) Again, under Rule 26(a)(1), Plaintiffs were required to provide a computation as to each type of damages claimed, and Plaintiffs failed to do so prior to the close of discovery, so their untimely assertion regarding damages is precluded. The Court therefore need not address whether or not Mr. Popovic was providing expert testimony.

1    The Court finds Plaintiffs failed to meet their obligations under Rules 26(a)(1) and

2    (e) as to damages disclosures, and their efforts to provide damages evidence after

3    discovery has closed would prejudice Defendant.

4    **b.    Rule 37(c)(1) Sanctions Against Plaintiffs are Justified**

5    First, Plaintiffs do not meet their burden to show how their violations of Rule 26

6    are either substantially justified or harmless. *See Yeti*, 259 F.3d at 1107. In their

7    Responses to Defendant's Motions *in Limine*, Plaintiffs do not put forth any argument

8    that their violations were substantially justified, but rather assert they complied with Rule

9    26. The Court also finds no evidence justifying Plaintiffs' noncompliance. Defendant

10   requested supplemental damages information (*see* Mot. *in Limine* 1, Ex. C) and counsel

11   for Plaintiffs acknowledged that more detail would be forthcoming, thus implicitly

12   acknowledging the necessity of that information (Mot. *in Limine* 1, Ex. D at 2). Counsel

13   for Plaintiffs did not show any justification for failure to provide additional information

14   as to damages prior to the close of discovery, and the Court finds Plaintiffs had sufficient

15   time to provide Defendant with such information.

16   Plaintiffs' noncompliance is also not harmless. Defendant is prejudiced by

17   Plaintiffs' noncompliance where only after discovery was closed did Plaintiffs provide

18   allegations, theories, and information as to their claim for damages, including notification

19   that Mr. Popovic would testify as to damages after repeatedly representing otherwise.

20   Defendant has lost its opportunity to challenge Plaintiffs' late-asserted damages claim.

21   For example, Defendant is now precluded from deposing Mr. Popovic regarding damages

22   and did not do so earlier based on Plaintiffs' assertion that Mr. Popovic would not testify

23   as to damages. This also applies to Mr. Engert, who Plaintiffs never disclosed would

24   testify as to damages. Moreover, this case is now at the summary judgment stage. The

25   Court has already considered and denied Plaintiffs' request to extend the expert discovery

26   deadline. (Doc. 59.)While it may be within the Court's discretion to reopen discovery, the

27   Court will not give Plaintiffs such a benefit in the face of their noncompliance. Moreover,

28   such an extension would be substantial and costly, causing prejudice to Defendant.

Having concluded that Rule 37(c)(1) sanctions are justified, the Court must consider whether Plaintiffs' noncompliance involved willfulness, fault, or bad faith. *See R & R Sails*, 673 F.3d at 1247. The Court does not find any evidence that Plaintiffs initially acted in bad faith or that their initial failure to disclose was willful. But Plaintiffs continued to fail to provide supplementary damages information and unequivocally represented to Defendant that Mr. Popovic would not testify as to damages, only to later reverse their position. Further, Plaintiffs told Defendant it was on notice because Plaintiffs previously stated Mr. Popovic would testify as to "all matters." Plaintiffs' continued failure to meet their Rule 26 obligations eventually became willful after sufficient time passed. *See Montalvo v. Am. Family Mut. Ins. Co.*, No. CV-12-02297-PHX-JAT, 2014 WL 2986678, at *8 (D. Ariz. July 2, 2014). Plaintiffs' actions constitute a knowing refusal to attempt to remedy their violation and their noncompliance was willful. *See R & R Sails*, 673 F.3d at 1247.

The Court concludes that the exclusion of Plaintiffs' untimely evidence regarding their alleged damages is the appropriate sanction for Plaintiffs' failure to disclose as required under Rule 26(a) and (e) and that no lesser sanction would be sufficient. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, the Court will not consider this evidence in ruling on Defendant's Motion for Summary Judgment.

## IV.    PLAINTIFFS' CONTRACT CLAIMS

### A.    Breach of Contract

To prove a breach of contract claim, a plaintiff must prove the existence of a contract, its breach, and the resulting damage. *Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz. 1998) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 237 (Ariz. 1963)).

As stated, Plaintiffs failed to meet their obligation under Rule 26 to disclose a computation of damages as to their alleged damages from the '4610 Account transfers and resulting harm to Greyside's business. Because the Court does not consider Plaintiffs' untimely presented damages evidence and because proof of damages is

1    required for a breach of contract claim, the Court will therefore grant summary judgment

2    on Plaintiffs' breach of contract claim.

3         **B.    Breach of Covenant of Good Faith and Fair Dealing**

4         Arizona law implies a covenant of good faith and fair dealing in every contract.

5    *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). Contract damages are commonly

6    available for breach of the covenant and are part of the *prima facie* case. *See United*

7    *Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 762 (Ariz. Ct. App. 2006). Plaintiffs have

8    failed to present a damages case, a *prima facie* element of this cause of action.

9    Accordingly, the Court will grant summary judgment on Plaintiffs' breach of covenant of

10   good faith and fair dealing claim.

11   **V.   PLAINTIFFS' TORT CLAIMS**

12        **A.    Negligence**

13        To establish a claim for negligence, a plaintiff must prove four elements: "1) a

14   duty requiring the defendant to conform to a certain standard of care; (2) a breach by the

15   defendant of that standard; (3) a causal connection between the defendant's conduct and

16   the resulting injury; and (4) actual damages." *Diaz v. Phoenix Lubrication Serv., Inc.*, 230

17   P.3d 718, 721 (Ariz. Ct. App. 2010) (quoting *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz.

18   2007)). As with Plaintiffs' contract claims, because Plaintiffs failed to disclose a damages

19   case and damages are an element of a negligence claim, the Court will grant summary

20   judgment on Plaintiffs' negligence claim.

21        **B.    Negligent Hiring, Training, and Retention**

22        In order for an employer to be liable for  negligent hiring, training, or retention of

23   an employee, the employee must have committed a tort. *Kuehn v. Stanley*, 91 P.3d 346,

24   352 (Ariz. Ct. App. 2004). "If the theory of the employee's underlying tort fails, an

25   employer cannot be negligent as a matter of law for hiring or retaining the employee." *Id*.

26   Here the underlying tort fails because the Court will not consider Plaintiffs' damages

27   evidence, and damages are an element of an underlying tort claim. The Court will grant

28   summary judgment as to Plaintiffs' negligent hiring, training, or retention tort claim.

## VI.    CONCLUSION

The Court finds Plaintiffs repeatedly failed to comply with their obligations under Federal Rule of Civil Procedure 26, and an exclusion sanction as to Plaintiffs' damages evidence is justified pursuant to Federal Rule of Civil Procedure 37 because Plaintiffs' noncompliance was willful. Accordingly, the Court did not consider Plaintiffs' late-disclosed damages evidence in considering Defendant's Motion for Summary Judgment. In the absence of the *prima facie* element of damages, the Court grants summary judgment on Plaintiffs' two contract claims and two tort claims.

**IT IS THEREFORE ORDERED** granting Defendant Bank of America, N.A.'s Motion for Summary Judgment (Doc. 77), Motion *in Limine* Pursuant to Rule 37(c)(1) to Preclude Plaintiffs from Introducing or Relying on Damages Evidence (Doc. 76), and Second Motion *in Limine* Pursuant to Rule 37(c)(1) to Preclude Plaintiffs from Introducing or Relying on Damages Evidence Disclosed for the First Time in Plaintiff's Response to Motion for Summary Judgment (Doc. 121). Defendant Bank of America, N.A. is entitled to judgment on all of Plaintiffs' claims against it.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

**IT IS FURTHER ORDERED** that, because the Court has dismissed all of Plaintiffs' claims against all named Defendants, the Clerk of the Court is directed to close this matter.

**IT IS FURTHER ORDERED** granting Defendant's request to file a motion for attorneys' fees. Defendant shall file its motion for attorneys' fees no later than May 20, 2016, and Plaintiffs shall file their Response no later than May 27, 2016. The Court will decide whether Defendant is entitled to attorneys' fees upon review of the parties' briefing.

Dated this 17th day of May, 2016.

Honorable John J. Tuchi
United States District Judge