**WO**                    NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aleksander Popovic, *et al.*, | No. CV-15-00357-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Christine Spinogatti, *et al.*, | |
| Defendants. | |

At issue is Defendant Bank of America, N.A.'s ("BANA") Motion for Attorneys' Fees and Non-Taxable Expenses, and Damages Pursuant to A.R.S. §§ 12-341.01 and 12-349, and 28 U.S.C. § 1927 (Doc. 140), to which the Plaintiffs Aleksander Popovic, Greyside Group, Inc., Greyside Group LLC, and Kenton Associates Resources Corporation (collectively, "Plaintiffs") and their counsel, Alane M. Ortega and the Law Office of Alane M. Ortega P.L.L.C. ("counsel") filed a Response (Doc. 148), and in support of which BANA filed a Reply (Doc. 149). The Court finds this matter suitable for resolution without oral argument. LRCiv. 7.2(f). For the reasons set forth below, the Court will grant in part and deny in part BANA's Motion.

**I.    FACTS, BACKGROUND, AND POSTURE**

The operative facts of this case are set forth in great detail in the Court's Order granting BANA's Motion for Summary Judgment (Doc. 135), and rather than repeating those facts, the Court will incorporate that Order herein. Plaintiffs brought ten separate claims against Defendants, including nine sounding in tort and one for breach of contract.

All ten claims arose out of the identical nucleus of operative factual allegations Plaintiffs made in their Initial Complaint. Plaintiffs alleged among other things that Defendant BANA, through its employees, wrongfully allowed Defendant Rob Caulfield to close Plaintiff Greyside Group's Bank of America account numbered XXXX4610 ("the '4610 account") and transfer out all its contents.[1, 2] Plaintiffs alleged that the emptying and closing of the '4610 account caused each of them financial and other damages. On Plaintiffs' motion, the Court dismissed one of the tort claims in May 2015. The Court granted summary judgment for the last remaining Defendant, BANA, as to the remaining nine claims in February 2016.

Defendant then filed the instant motion, arguing it is entitled to attorneys' fees under each of three theories. First, Defendant notes it prevailed on Plaintiffs' contract claim and can satisfy all statutory requirements for a fee award under A.R.S. § 12-341.01. Second, Defendant urges it is eligible for an award under A.R.S. § 12-349 against both Plaintiffs and their counsel because Plaintiffs' claims were groundless, were brought in bad faith and for purposes of delay or harassment. Finally, Defendant seeks attorneys' fees as assessed against counsel pursuant to 28 U.S.C. § 1927, arguing that she unreasonably and vexatiously multiplied the proceedings in this matter.

---

[1] Plaintiffs maintained that BANA had also improperly allowed co-Defendant Chris Gowins, a Caulfield employee, access to Plaintiffs' accounts, including most prominently the '4610 account. Plaintiffs' allegations regarding Gowins are not the primary subject of Defendant's Motion, as Defendant produced evidence that Popovic executed signature cards in August 2011 allowing Gowins access to the '4610 account and others, and Plaintiffs did not assert new facts contesting that evidence. Caulfield and Gowins were dismissed as defendants prior to removal of this matter.

[2] The Court notes that Plaintiff originally sued Bank of America Corporation ("BAC"), as well as BANA employee Christine Spinogatti and her marital community, on all claims as well, but BAC and Spinogatti successfully moved for dismissal. (Doc. 1, ¶¶ 10-11.) Upon its dismissal, BAC successfully petitioned for attorneys' fees and costs. Because the Court has already addressed the fee and cost issues regarding Plaintiff's bringing and maintaining an action against BAC in a prior Order, it will again do so here.

## II. ANALYSIS

### A. Attorneys' Fees Pursuant to A.R.S. § 12-341.01

One of the nine claims brought and not voluntarily dismissed by Plaintiffs—Count 10—alleged breach of contract by BANA. (Doc. 1 Ex. 1 at pp. 22-23.) Defendant prevailed on this claim in obtaining summary judgment. The Court thus may in its discretion award BANA attorneys' fees for prevailing on that claim, which "arises out of contract" within the meaning of § 12-341.01, as long as it finds by preponderance that the other statutory requirements are met.

In determining whether the requirements of § 12-341.01 are met, the Court must consider whether 1) Plaintiffs' claim was meritorious; 2) the litigation could have been avoided or settled and Defendant's efforts were completely superfluous in achieving that result; 3) assessing fees against Plaintiffs would cause extreme hardship; 4) Defendant prevailed with respect all the relief sought; 5) the legal question presented in the breach of contract claim was novel and whether such a claim had previously been adjudicated in Arizona; and 6) an award of attorneys' fees would discourage other parties with tenable claims or defenses from litigating legitimate contract issues for fear of incurring liability for substantial amounts. *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996). An evaluation of these factors leads the Court to conclude that Defendant has met them.

#### 1. *Newbery* Factors One and Two

For reasons also discussed in its Order granting summary judgment for Defendant (Doc. 135), the Court finds that Plaintiffs' contract claim was without merit, and while it may or may not have been brought in bad faith initially, beyond some point, as discussed below, it was maintained in bad faith. The gravamen in of the contract claim—and in fact all of the claims—was that BANA allowed an unauthorized person, Mr. Rob Caulfield, to empty and close Plaintiffs' accounts, including principally the '4610 account. That allegation had no evidentiary support other than Plaintiff Popovic's assertion that he was the only signatory on the accounts. And as discovery progressed, all parties were or

- 3 -

became aware of substantial evidence to the contrary: Plaintiffs were confronted with evidence that Mr. Caulfield was in fact a signatory on the '4610 account, including production of the account signature card so stating; testimony of the BANA employee who handled the addition of Mr. Caulfield and took his driver's license and other personal identifying information as part of the signatory addition process; deposition testimony of Mr. Caulfield consistent with the BANA employee; prior testimony of Mr. Popovic in this matter acknowledging that both he and Mr. Caulfield were signatories on the '4610 account; and email in Mr. Popovic's possession that he had authored indicating Mr. Caulfield was in fact on the account.

Faced with this evidence, which Plaintiffs already had or which BANA had put before them no later than May 27, 2014, (Doc. 140-1 Ex. 8), Plaintiffs did not elect to examine, revise or withdraw their claims. Instead, Plaintiffs doubled down, asserting that the signature card and other evidence indicating Caulfield was added to the account was a forgery because Plaintiff Popovic was overseas on business at the time of its purported signing, and therefore could not possibly have added Caulfield to the '4610 account as BANA contended. Plaintiffs' counsel conveyed this assertion to counsel for BANA in a July 22, 2014 letter and again in an August 19, 2014 letter, each time representing that she would obtain and provide travel records substantiating the claim that Popovic was out of the country on May 13, 2011, the day the signature card was executed. She never provided such records and, as of January 2015, had not even requested them.

To disprove Popovic's claim, BANA obtained Popovic's debit and bank card records for the relevant time period to discern his whereabouts in May 2011. Those records showed that Popovic's debit card was used in Arizona to make purchases on and around May 13, 2011. BANA provided the debit card records to Plaintiffs' counsel in November 2014. Nonetheless, counsel for Plaintiff sent another letter on December 31, 2014, continuing to maintain that Popovic was in Europe before, during, and after May 13, 2011. And at his deposition a week later, on January 7, 2015, Popovic continued to

1  assert that he was in Europe on May 13, 2011 and could not have signed the card for the
2  '4610 account.
3     As Plaintiffs maintained their position despite the debit card records, and as they
4  had not provided the travel records counsel had promised, BANA engaged in the process
5  of locating and securing—through subpoenas, depositions, and court orders—United
6  States Department of Homeland Security port of entry transit records for Spring of 2011,
7  as well as records from several airlines for the same period pertaining to Popovic. Those
8  records, once obtained, confirmed that Popovich was not travelling internationally on
9  May 13, 2011, and was in fact in Arizona on the execution date of the signature card that
10 added Caulfield to the '4610 account; specifically, Popovich had traveled from Phoenix
11 to Virginia on May 9, 2011, returned to Arizona on May 10, and then left for Germany on
12 May 16, 2011. Defendants disclosed this evidence to Plaintiffs in or around late April
13 2015.
14     Despite this overwhelming evidence, Plaintiffs took no action to address the issue
15 or modify or withdraw the claims until November 2015, when they moved to dismiss
16 their claims with leave to refile them. In the interim seven months, facing case
17 management deadlines set by this Court and the need to defend itself, BANA continued
18 to expend significant amounts as its counsel prepared for the summary judgment stage.
19 The Court denied Plaintiffs' motions to dismiss without prejudice, having concluded in
20 light of the proceedings to that point that only dismissal with prejudice would be
21 appropriate. Plaintiffs took no further action to address the issues with their claims and
22 BANA filed a motion for summary judgment in December 2015, which Plaintiffs
23 opposed. Again, Plaintiffs took no further action to correct misstatements through May
24 2016, when the Court granted summary judgment to BANA.
25     In view of the evidence discussed above, the Court finds that Plaintiffs' claims
26 were without merit. The Court also finds that Defendant's efforts were not superfluous—
27 indeed, in the face of Plaintiffs' refusal to consider or address the clear issues with their
28 key factual assertions that became increasingly obvious as discovery accumulated,

Defendant's efforts in securing the evidence it did to present a fulsome motion for summary judgment was necessary to obtain the result. Factors One and Two both militate strongly in favor of an award of attorneys' fees.

### 2. The Remaining *Newbery* Factors

The Court finds that Factor Three—whether assessing fees against Plaintiffs would cause extreme hardship—militates against an award of attorneys' fees. Plaintiffs have demonstrated the poor financial condition of each of them.

Factor Four—whether Defendant prevailed with respect to all the relief sought—falls wholly in favor of awarding fees. Defendant prevailed in all respects by first persuading the court to dismiss its corporate affiliate, BAC, and its employee co-defendant, Christine Spinogatti, and then winning summary judgment on all remaining claims against itself.

Factor Five also falls in favor of an award, as the legal question presented in the contract claim was not in the least novel and was a staple of claims previously adjudicated in Arizona.

Finally, Factor Six falls firmly in favor of an award. The Court finds that an award of attorneys' fees here would not discourage other parties with tenable claims or defenses from litigating legitimate contract issues for fear of incurring liability for substantial amounts, because such claims are easily distinguishable from the claims here. In the present case, while the claims might colorably have had merit at the outset, once discovery undermined Plaintiffs' core factual assertion, any colorable merit dissipated. Thus, while this factor might not have pointed in favor of an award had the contract claim been dismissed at a much earlier stage of the case, the Court finds it does support an award here precisely because Plaintiffs persisted in maintaining their claim and pushing the litigation well after its fatal flaws were evident, thus forcing BANA to spend additional funds on its continued defense.

### 3. Award under A.R.S. § 12-341.01

In sum, five of the six *Newbery* factors lean heavily in favor of an award of attorneys' fees under A.R.S. § 12-341.01; only one militates against such an award. While the Court's analysis is not strictly arithmetic, it is firmly convinced after considering all factors here that an award is justified.

The Court finds that the hourly rates of Defendant's counsel are reasonable, considering the skill and experience of the legal professionals involved and the prevailing rates of lawyers with comparable skill and experience in the relevant legal community. The Court also finds that the time spent by Defendant's counsel in the matter, while quite substantial, is reasonable under the circumstances. Because only one of the nine claims Plaintiffs maintained throughout the litigation is based on contract, however, Defendant is not entitled to the entire amount of fees it put forward, which totaled $491,073, under A.R.S. § 12-341.01.[3] The Court concludes that for prevailing in these circumstances on its contract claim, Defendant is entitled to an award of one-ninth of the entire amount it spent on attorneys' fees to defend this matter, or $54,563.67.

### B. Attorneys' Fees Pursuant to A.R.S. § 12-349

A court may assess against a party, its counsel, or both jointly and severally, attorneys' fees, expenses, and damages not to exceed $5000, if it finds by a preponderance of the evidence that the attorney or party brought a claim without substantial justification, brought it solely or primarily for delay or harassment, unreasonably expanded or delayed a proceeding, or engaged in abuse of discovery. A.R.S. § 12-349(A); *Fisher ex rel. Fisher v. National General. Ins. Co.*, 965 P.2d 100 (Ariz. Ct. App. 1998). Section 12-349 defines the term "without substantial justification" to mean that the claim is groundless, is not made in good faith, and/or constitutes harassment. A.R.S. § 12-349(F).

---

[3] This amount represents net fees, after subtracting the $6,491.00 the Court already awarded Defendants pursuant to the dismissal of BAC and Spinogatti.

In awarding attorneys' fees under § 12-349, the Court may consider factors including: 1) the extent of any effort made to determine the validity of a claim before the claim was asserted; 2) the extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss the claims found not to be valid; 3) the availability of facts to assist a party in determining the validity of a claim; 4) the relative financial positions of the parties involved; 5) whether the action was prosecuted, in whole or in part, in bad faith; 6) whether issues of fact determinative of the validity of a party's claim were reasonably in conflict; 7) the extent to which the party prevailed with respect to the amount and number of claims in controversy; and 8) the amount and conditions of any offer of judgment or settlement as related to the amount and conditions of the ultimate relief granted by the court. A.R.S. § 12-350. These factors do not independently determine fee awards, but rather guide courts in making awards authorized by § 12-349. *Donlann v. Macgurn*, 55 P.3d 74 (Ariz. Ct. App. 2002). The Court has necessarily evaluated each of these factors in its analysis of Defendants' contract-based claim attorneys' fees above, but will crystalize relevant points here.

Factor One – the extent of any effort Plaintiffs made to determine the validity of a claim before the claim was asserted – is of limited value in the Court's assessment of this matter. As the Court has found above, the issue does not lie with decisions Plaintiffs made at the initiation of this case, when it arguably had limited knowledge of all operative facts, had not yet had the benefit of discovery, and may have pleaded certain allegations based on information and belief. This factor is therefore neutral in determining whether an award of attorneys' fees, expenses, and/or damages are warranted.

In contrast, Factor Two – the extent of any effort Plaintiff made after commencing the action to reduce the number of claims asserted or to dismiss the claims found not to be valid – is highly germane to the issue before the Court. As discussed in detail above, while Plaintiffs and their counsel may well have failed to recognize factual issues with the key allegations in support of their claims at the inception of the case, evidence

steadily accumulated during the discovery phase, and was affirmatively presented to them. At some point that evidence passed a threshold whereby Plaintiff Popovic, and thus his closely held corporate co-Plaintiffs, knew or should have known that the claims were not valid, and had to be revised or dismissed. The same conclusion applies to Plaintiffs' counsel, although, due to her lack of direct knowledge of the truth or falsity of Plaintiff Popovic's assertions, the time by which she should have realized they likely were false would have been later in the litigation. This factor militates in favor of an award.

Factor Three – the availability of facts to assist Plainitffs in determining the validity of their claims – also militates in favor of an award to Defendant. The record in this matter shows a clear progression of additional relevant and substantial evidence emerging throughout discovery, that first called into question the validity of Plaintiff Popovic's assertion that he was out of the country on May 13, 2011, and ultimately proved it false. This progression occurred throughout 2014 and into the first four months of 2015, and was met with either no reaction or active resistance by Plaintiffs and their counsel, despite their access to clearly relevant facts.

Factor Four – the relative financial positions of the parties – is not germane to the question of an award in this matter. Any relative financial disadvantage of Plaintiffs in comparison to Defendant is mooted by the fact that Defendant provided Plaintiffs and their counsel with all relevant information calling into question the truth of Plaintiffs' assertions.

Factor Five – whether Plaintiffs prosecuted the action, in whole or in part, in bad faith – falls in favor of an award. As the Court noted in Section II.A, at some point, Plaintiffs should have known that Popovic's assertion that he could not have executed the signature card—and therefore all of their claims, which rested on that assertion—were infirm. That point came no later than late 2014, when Defendant provided Plaintiffs with debit card and airline records demonstrating that Plaintiff Popovic was in Arizona on May 13, 2011. Rather than withdraw, seek to amend and modify, or even to pause and

examine the claims and the underlying evidence, Plaintiffs plowed straight ahead and continued to assert the claims and allegations without change.

And while Plaintiffs' counsel may not have known of the infirmity of the claims at that point, she definitely knew as of late April 2015, when she was presented with the final and unassailable evidence that Mr. Popovic's assertions were untrue, in the form of the DHS port of entry records. Yet she did nothing for at least an additional seven months, resulting in Defendant spending a great deal on its defense.

Factor Six – whether issues of fact determinative of the validity of Plaintiffs' claims are reasonably in conflict – falls slightly in favor of an award through mid-2014, when discovery began to unearth evidence contradicting Popovic's statement about his absence from Arizona. The factor then falls increasingly in favor of an award thereafter, as through late 2014 and early 2015, more and more evidence emerged to disprove his assertion.

Factor Seven – the extent to which Defendant prevailed with respect to the amount and number of claims in controversy – falls fully in favor of an award. As discussed above, Defendant first won the dismissal of its employee, Ms. Spinogatti, and its corporate affiliate, BAC, and then won summary judgment on all nine remaining claims against itself.

Finally, Factor Eight – the amount and conditions of any settlement demand as related to the amount and conditions of the ultimate relief granted by the court – also falls in favor of an award. On October 29, 2015, after Defendant had produced all of the evidence demonstrating that Popovic's allegations were false, Plaintiffs' counsel still demanded $6.7 million to settle their claims. Plaintiffs ultimately took nothing upon judgment of the Court.

The eight factors in § 12-350 collectively militate very strongly in favor of an award under § 12-349. The amount of the award, whether any portion of it should be assessed jointly and severally among both Plaintiffs and counsel, and if so, how much, are in the Court's view largely determined by the timing of when Plaintiff Popovic and

counsel, respectively, knew or should have known the factual allegations underpinning the claims were unsustainable. The Court will assess against Plaintiffs all reasonable attorneys fees accrued by Defendant in this action after such date.

The Court will fix the date by which Plaintiffs knew or should have known their claims were unsustainable at January 7, 2015. By that date, as detailed above in Section II.A.1, Defendant had produced to Plaintiffs the signature cards and other bank documentation demonstrating that both Caulfield and Gowins were added to the '4610 and other accounts; the deposition of the bank employee who handled the transactions; the depositions of Caulfield and Gowins affirming that conclusion; and debit card and other travel records demonstrating that Popovic was not in Europe at the time the signature card for the '4610 account was executed, and in fact was in Arizona. Significantly, Plaintiffs also had in their possession an e-mail dated June 3, 2011 from Popovic to Caulfield affirming that both of the men were signatories on the '4610 account. Yet, with all this information, Plaintiffs continued to maintain that Popovic had been out of the country on May 13, 2011, and could not have executed any such signature card granting Caulfield account access. On January 7, 2015, Popovic repeated and affirmed these assertions during his deposition. It is the conclusion of the Court that all fees generated in the defense of this matter after that date are therefore attributable to Plaintiffs' bad faith, and therefore are assessable against Plaintiffs. A review of the 39-page line item billing record of defense counsel in this matter reveals that, net of the write-down of charges, counsel billed, and Defendant paid, $325,419 for legal work on the defense of the case after January 7, 2015. That amount includes part of the $54,563.67 award for the contract claim-related fees set forth in Section II.A.3 above, so the amount must be adjusted downward to avoid double-counting. On a pro-rated basis, the amount will be reduced by $36,110.24.[4] Thus, the Court will assess fees against Plaintiffs, pursuant to § 12-349, of $289,308.76.

---

[4] Of the $491,073 in attorneys' fees paid by Defendant in this matter, $325,419, or 66.2 percent of that amount, was for work performed after January 7, 2015. 66.2 percent of the $54,563.67 award for the contract claim under § 12-341.01 equals $36,110.24. The

- 11 -

Defendant also seeks non-taxable expenses of $23,873 and the maximum statutory damages of $5,000 under § 12-349. Although the Court has discretion to also award expenses and damages under the statute, it concludes the above assessment, in combination with the award under § 12-341.01, sufficiently addresses the conduct of Plaintiffs, and declines to make additional assessments against them.

The Court finds that each of the reasons supporting an assessment against Plaintiffs apply equally to their counsel. The assessment for which counsel shall be jointly and severally liable is significantly less than that which the Court assessed against Plaintiffs, to reflect a difference in timing of when counsel knew or should have known her clients' claims had no merit.

As of January 7, 2015, the date by which the Court concludes Plaintiffs knew their claims were without merit, counsel was differently positioned. Set against the discovery and evidence she had received from Defendant calling into question the whereabouts of Popovic on the critical date of May 13, 2011, she had not only Popovic's repeated assertion that he was in Europe, but also had his stamped passport indicating that he had arrived at London Gatwick Airport on, as Defendant acknowledges in its motion for summary judgment, "the 6th day of a month beginning with the letters 'MA,' [with] the third letter illegible." Having this information, reinforced by Popovic's assertion that he was in Europe from May 6 to May 18, 2011, and another passport stamp showing he left Dusseldorf on May 18, 2011, counsel could reasonably have believed in good faith that the illegible third letter was a "y," and that, notwithstanding the debit card records and other circumstantial evidence, Popovic was in Europe during the entire span of May 6 to 18, 2011. Unlike Plaintiff Popovic, who knew when he had actually travelled and where, counsel still had some cause to believe her client's assertions as of January 7, 2015, and for some time thereafter—until she received the definitive DHS port of entry records from Defendant at some point in April or May 2015—and had a reasonable time to review and contemplate them.

---

assessment under § 12-349 thus must be reduced by $36,110.24.

Once counsel received and reviewed the DHS records, there should have been no doubt in her mind that her client's factual assertions about his European travel, and therefore his inability to have executed the signature card for the '4610 account, were untrue, either intentionally or by mistake. At that point her obligations under the Rules of Professional Responsibility and under the Federal Rules of Civil Procedure required her to avoid furthering a falsehood or pursuit of non-meritorious and unsustainable claims. Failing to recognize or act on those obligations, counsel bears responsibility for additional fees BANA incurred thereafter.[5]

When laid out in chronological order, as defense counsel did in his declaration in support of Defendant's Motion for Attorneys' Fees, the acts and statements of counsel for Plaintiff do not strike the Court as clear indicia of an intent to deceive. Rather, they appear to demonstrate counsel's failure to recognize two core professional charges she has as an attorney and counselor. The first of these is a charge of vigilance not to blindly take and advance her client's claims and assertions at face value, particularly when substantial evidence causes one to seriously question the truthfulness of those claims and assertions. Counsel for Plaintiff failed in this duty by what can only be described as an exercise in cognitive dissonance. As discussed elsewhere in this Order, at the onset of this litigation and even significantly into it, counsel may not have recognized the falsity of her client's representations. But as discovery wore on and the evidence discrediting those statements mounted, she simply held the course, despite obvious red flags that, at a minimum, should have caused her to reserve further repetitions of those positions until she had run them to ground. The most obvious way to have done this was to actively obtain her client's travel records for May of 2011, either through him, through the airlines, or through Homeland Security. Counsel never did this, though she represented for many months to defense counsel that she was taking such steps.

---

[5] On the same basis set forth above in its analysis under § 12-349, the Court finds that an assessment of fees against Plaintiffs' counsel is justified under 28 U.S.C. § 1927. It will not repeat that analysis in this Order, and the finding does not add to the amount of the assessment. The Court's finding under § 1927 merely provides an alternative basis for the assessment made in § 12-349.

- 13 -

The second of these is a professional duty to ensure that the claims and representations she makes, whether in moving papers before the Court or in correspondence with opposing counsel, are grounded in fact. In particular, when making detailed assertions and cites to record items that ostensibly support her client's position, and that the Court and others are to understand as such, the record items so cited must actually stand for the propositions counsel claims they do. On this duty, counsel failed thoroughly. As the Court noted in its summary judgment Order, multiple sources cited in her briefing failed to say what counsel represented them to say. Worse yet, even more citations referred to sources that either were not provided or did not exist. The Court concludes these errant citations were the result of great carelessness rather than a plan to deceive it. But the cause is not as important as the effect, which is a brief of highly suspect reliability and credibility, at a critical stage of the case.

When an attorney fails to meet to either of these two imperatives, the specific matter in litigation and the general reputation of the profession suffer, as discussed above. When he or she fails to observe both of these duties, as occurred here, proceedings in the action become unmoored, abusing the judicial proceeding, wasting the time and effort of the Court and opposing counsel, and forcing the opposing party to expend great sums to defend against claims in litigation that should never have reached such a point. Plaintiffs' counsel thus shall be responsible for attorneys' fees accrued by Defendant from the point of her failures to grasp these obligations, where those failures cost Defendant additional resources.

The Court fixes that point for counsel at October 29, 2015, when, with all evidence produced in discovery, adequate time to digest it, and the benefit of defense counsel's October 15, 2015 settlement letter and its analysis of the clear factual problems with Plaintiffs' claims, she persisted in those claims and demanded $6.7 million to settle them. It will therefore assess her jointly and severally for the defense fees generated by defense counsel and paid by Defendant after October 29, 2015, which total $52,634.44,

net of pro-rated write-offs and adjustment for the pro-rated portion of Defendant's contract claim award.

**IT IS ORDERED** granting in part and denying in part Defendant's Motion for Attorneys' Fees. (Doc. 140.)

**IT IS FURTHER ORDERED** awarding Defendant $54,563.67 pursuant to A.R.S. § 12-341.01. Plaintiffs Aleksandar Popovic, Greyside Group, Inc., Greyside Global, LLC and Kenton Associates Resources Corporation shall be jointly and severally liable to Defendant for this amount.

**IT IS FURTHER ORDERED** awarding Defendant $289,308.76 pursuant to A.R.S. § 12-349 and 28 U.S.C. § 1927. Plaintiffs Aleksandar Popovic, Greyside Group, Inc., Greyside Global, LLC and Kenton Associates Resources Corporation shall be jointly and severally liable to Defendant for this amount. Plaintiffs' counsel, Ms. Alane Ortega and the Law Office of Alane M. Ortega P.L.L.C., shall be jointly and severally liable with Plaintiffs for $52, 634.44 of that amount.

Dated this 5th day of December, 2016.

_____
Honorable John J. Tuchi
United States District Judge